IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MONTGOMERY, #121 219, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-197-WHA |
| | ) | [WO] |
| MS. LAWSON - CLASSIFICATION, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, an inmate incarcerated at the Staton Correctional Facility located in Elmore, Alabama, filed this 42 U.S.C. § 1983 challenging matters associated with his placement on segregation between March and May of 2011.[1] Named as defendants are Warden Cummings, Warden Edwards, Eric, Boscomb, Lieutenant Hawthorn, Sergeant M Kennely, and Mrs. Lawson. Plaintiff seeks monetary relief. Upon review of the complaint, the court concludes that dismissal of this case prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B).[2]

---

[1] According to the complaint, the actions about which plaintiff complains occurred at the Elmore and Kilby Correctional Facilities.

[2] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I. DISCUSSION

Plaintiff is challenging matters associated with his placement on segregation between March and May of 2011. Specifically, he contends that Defendants failed to comply with the requirements of Administrative Regulation 403 that inmates be allowed to make a phone call upon their assignment to segregation and that inmates be given a notice every 72 hours if they are to remain in segregation pending an investigation. Plaintiff further asserts that Defendants subjected him to double jeopardy when they released him from segregation on April 5, 2011, and then returned him to segregation on April 7, 2011, for the same charge. The court understands Plaintiff to allege that the conduct about which he complains violated his right to due process as well as prison regulations.

An essential element of a complaint filed under § 1983 is that the conduct complained of deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981). Here, Plaintiff's contentions that Defendants subjected him to double jeopardy by placing him on segregation twice for the same conduct and failing to allow him an opportunity to call a lawyer or his family while on segregation entitle him to no relief. An inmate's placement in segregation is not part of a criminal prosecution, and, therefore, does not implicate double jeopardy concerns. *See Breed v. Jones*, 421 U.S. 519, 528 (1975) (application of the double jeopardy clause is limited to proceedings which are "essentially

criminal"). Plaintiff also has no constitutional right to call an attorney or his family with respect to his prison housing assignments.

With regard to Plaintiff's claim that his placement on segregation violated his due process rights where Defendants failed to comply with prison regulations in relation to such placement, he is likewise entitled to no relief on the facts alleged. The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the

state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations about which Plaintiff complains, without more, do not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. at 484. This court must, therefore, determine whether the actions about which Plaintiff complains involve the

deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>     "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>     After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that Plaintiff's allegations regarding his assignment to segregation under the circumstances described, "though concededly

punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. Plaintiff does not allege that his confinement on segregation subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin* , 515 U.S. at 484. Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaints in relation thereto fail to state a due process claim. *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3rd Cir. 1997).

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED with prejudice and prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i-ii).

It is further

ORDERED that on or before **May 7, 2012,** the parties may file objections to this Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 23rd day of April, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE